# EXHIBIT L

# City of Miami



George K. Wysong, III
City Attorney

Telephone: (305) 416-1800
Telecopier: (305) 400-5071
E-MAIL: Law@miamigov.com

May 8, 2026

RE:   Denise M. Harle
        FSU College of Law First Amendment Clinic
        dharle@law.fsu.edu

Dear: Ms. Harle

The City of Miami ("City") is in receipt of your letter regarding the City's Media Relations Policy (attached). Our policy, much like Florida State University Police Department and Board of Trustees' policies (also attached), establishes who may provide a statement *on behalf of the City*. Although individuals who work for the City cannot speak *on behalf of the City* without obtaining prior approval, the policy does *not* limit an individual's right to respond to the media as a private citizen on a matter of public concern. Further, the policy does not restrict the media from asking City employees whether they wish to comment on a matter of public concern as a private citizen, though the decision to respond is solely up to the employee.

This policy complies with United States Supreme Court precedent. As you are most likely aware, the pivotal case on public employment free speech is the United States Supreme Court decision of *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006). In the event you are not familiar with *Garcetti,* the case discusses the limitations on public employee's speech who speak in their capacity as an employee, and not as an individual. In that case, a district attorney believed a police officer lied under oath. *Id.* As a result, he wrote a memorandum to his supervisors stating such and recommended dismissal of the case; the defense later called the attorney at a motion to suppress hearing because of his affidavit. *Id.* at 414. The attorney thereafter believed he was retaliated against for his memorandum and testimony and later sued, claiming First Amendment retaliation. *Id.* at 415. The Supreme Court stated the speech was not protected by the First Amendment because the attorney's memorandum and subsequent testimony were made pursuant to his job duties. *Id.* at 410. Specifically, the Court stated, "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

Despite the allegations in your letter, the City's policy does *not* restrict any employee's decision to speak to the press. In fact, the policy expressly informs employees of their right to speak to the media as a private citizen:

OFFICE OF THE CITY ATTORNEY / 444 S.W. 2nd Avenue, Suite 945 / Miami, Florida 33130-1910

**Personal Points of View**

It is recognized that all employees have the right to their personal points of view regarding any issue. However, personal points of view may conflict with the City's official policy. Therefore, City employees who write letters to the editor of any newspaper may not use official City stationary. If an employee chooses to identify himself or herself as a City employee in any personal letter or email to the editor or any other media, he or she must include language which states that the views set forth in the letter do not represent the views of the City, but rather, are the employee's personally held opinions. Similar disclaimers must be given if an employee addresses a public meeting, participates in a radio talk show, or is interviewed for a radio or television program unless the employee is officially representing the City.

Employees who represent the City in any of the above forums must identify themselves as an official spokesperson for the City after obtaining prior approval from the City Manager and in consultation with the Office of Communication.

Based on our policy, your client, Coconut Grove Spotlight, was informed that it may reach out to any employee at the City and that such employee may provide a comment as a private citizen if that employee chooses. Your client, however, does not wish to speak to a City employee as a private citizen. Rather, they are asking for an employee *of their choice* to speak *on behalf of the City* and be the official spokesperson *for the City*:



Re: Interview Request: Quatisha Oguntoyinbo-Rashad

David Villano <villanospotlight@gmail.com>
To  Panoff, Stephanie K.
Cc  Poleo, Helena; Wysong, George K.; Office of Communications, City of Miami; Oguntoyinbo-Rashad, Quatisha; De la Maza, Cristina; Solino, Jorge
Retention Policy  Delete: 10 Years (10 years)          Expires  5/4/2036
If there are problems with how this message is displayed, click here to view it in a web browser.

Reply | Reply All | Forward
Thu 5/7/2026 7:10 PM

**CAUTION:** This is an email from an external source. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Stephanie —

The Spotlight has requested an on-the-record interview with Quatisha Oguntoyinbo-Rashad so that we can ask questions about past and present city tree policy, changes in standard operating procedures prior to her reassignment to RPW, recent staffing changes, her thoughts on the efforts in 2024 and 2025 to rewrite Chapter 17, how permitting processes and oversight changed after Building absorbed Environmental Resources, her transfer to RPW, and her reaction to a resident petition calling for her reassignment to her previous role as chief of Environmental Resources.

As a 26-year city veteran — and, until recently, the senior official overseeing tree policy — she is uniquely qualified among existing staff to address issues central to our reporting. There is no surrogate on city staff who can accurately address the breadth of questions we intend to ask.

I understand that the city's media policy requires staff members to receive prior authorization from Communications or another senior city official before engaging with media to address subjects such as these. It is that authorization we have been requesting for more than three weeks.

Despite a flurry of recent emails, however, we still have not received a clear response to that request, other than Helena Poleo's veiled threat that continuing to pursue this matter could jeopardize the working relationship between the Spotlight and her office.

Thanks,
Dave

As such, your client is aware of its rights to reach out to the employee of their choosing; they simply do not like the fact that such employee cannot speak *for the City.* In other words, your client would like to tell the City who it should designate as its spokesperson.

Though the caselaw cited in your letter is irrelevant to the topic of whether *the media* can dictate who can respond to media inquiries *on behalf of* a municipality or corporation, which it cannot, other caselaw dictates that your client does not have a Constitutional right to require a response from the City, let alone a response from the specific City employee of your client's choosing. *Houchins v. KQED, Inc.,* 438 U.S. 1, 2 (1978) (.."neither the First Amendment nor the Fourteenth Amendment provides a right of access to government information or sources of information within the government's control."); *Villarreal v. Alaniz*, 146 S. Ct. 939, 943 (2026) ("In other words, the government has no obligation to make nonpublic information available to journalists, and if an official declines to provide information, the journalist usually has no recourse."); *Pell v. Procunier*, 417 U.S. 817, 834–35 (1974) (the Constitution does not impose a duty on a government "to make available to journalists sources of information not available to members of the public generally.").

We have informed your client that it may reach out to any employee at the City of Miami, but that such statement will be on be made on the employee's own behalf as a private citizen. This complies with the First Amendment.

Please feel free to reach out to myself or to Kevin R. Jones, Deputy City Attorney, should you have a public records request or any further inquiry.

Thank you.

Sincerely,

*/s/ Stephanie K. Panoff*

Stephanie K. Panoff
Chief, Labor & Employment Division
skpanoff@miamigov.com

# City of Miami



**Administrative Policy Manual**

# APM 01-11: Media Relations Policy

| | |
|---|---|
| **Purpose** | To establish a policy regarding media relations, including all interaction with the media and response to media requests for information. Media Relations is defined as communication with or information provided to all media in any form, especially information that has the potential to generate numerous inquiries or ongoing interest from the media or public. |
| **Policy** | It is the policy of the City of Miami to respond to news media questions or inquiries effectively, accurately and quickly to inform its residents, businesses, and visitors. |
| | The Office of Communications is responsible for the City's media relations, with the exception of incidents involving police, fire or public safety emergency services. The Office of Communications will serve as the sole liaison with the media, either by responding to requests for information or facilitating contact with the appropriate department managers or personnel for response. Specific guidelines for responding to media requests follow. |
| **City Spokespersons** | Unless otherwise authorized, the City's spokespersons are:<br><br>• City Manager, Deputy and/or Assistant City Managers;<br>• Police Department and Fire Department Public Information Officers or the respective Chiefs<br>• The City Manager has sole authority to issue exceptions regarding spokespersons. |
| **Media Inquiries** | Except for media inquiries related to public safety issues involving police, fire or emergency services, all City employees must notify the Office of Communications and the employee's Department Director about all television, radio, newspaper or other media inquiries they receive and provide the Office of Communications with the reporter's name, phone number, subject of the inquiry, deadline, and other relevant information. The Office of Communications will contact the City Manager's Office and coordinate a response including designating a spokesperson after consultation with the |



City of Miami                                                                    APM 01-11: Media Relations Policy

City Manager's Office.

| **City-Initiated Information** | Media contact shall be initiated only by the Office of Communications. This includes contacting reporters and editors, and issuing press releases and media advisories. Departments seeking publicity for events or activities should contact the Office of Communications as early as possible. |
|---|---|

City employees or Departments shall not initiate news media contacts or arrange news conferences and the like without prior approval from the City Manager and in consultation with the Office of Communication.

**Media Initiated Information**

In those instances where the media inquiries involve talk shows, radio, television, or web appearances; all responses shall receive advance approval from the City Manager, with the exception of designated spokespersons such as Director of Communications, Public Information Officers, Chief of Police and Chief of Fire.

**Personal Points of View**

It is recognized that all employees have the right to their personal points of view regarding any issue. However, personal points of view may conflict with the City's official policy. Therefore, City employees who write letters to the editor of any newspaper may not use official City stationary. If an employee chooses to identify himself or herself as a City employee in any personal letter or email to the editor or any other media, he or she must include language which states that the views set forth in the letter do not represent the views of the City, but rather, are the employee's personally held opinions. Similar disclaimers must be given if an employee addresses a public meeting, participates in a radio talk show, or is interviewed for a radio or television program unless the employee is officially representing the City.

Employees who represent the City in any of the above forums must identify themselves as an official spokesperson for the City after obtaining prior approval from the City Manager and in consultation with the Office of Communication.

**Public Safety Issues**

Because the Police and Fire Departments operate during off-business hours and weekends and their work generates a high volume of media calls, those departments have designated sworn personnel as media spokespersons and follow specific guidelines when releasing information. Any media calls to other City employees regarding incidents involving police, fire or emergency services should be referred immediately to the Police Department or Fire Department, as appropriate. All information released to the media by the Police and Fire Departments should be provided immediately to the City Manager's Office and the Office of Communications; and, when appropriate, those offices should be contacted at the time of major incidents.

**Crisis or**

During a crisis or a major emergency (i.e. hurricane), the City Emergency

City of Miami                                                    APM 01-11: Media Relations Policy

**Emergency Issues**

Manager (EM) in coordination with the City Manager will determine whether and when to activate the City's Emergency Operations Center (EOC). Thereafter, the City's Public Information Officer (PIO) will coordinate press statements/releases with the City Manager and the EOC and will be responsible for disseminating information to the public and media.

Policy Number: **APM 01-11**

Date: March 22, 2018

Issued By: _____

**Emilio T. Gonzalez**
*City Manager/Designee*

| | REVISIONS | |
|---|---|---|
| *REVISED SECTION* | | *DATE OF REVISION* |
| Created | | 01/2011 |
| Revised | | 07/2011 |
| Revised | | 03/2018 |

**Florida State University Policy 1-1 BOT Operating Procedures**

**Title of Policy:** Operating Procedures
**Responsible Executive:** University Board of Trustees
**Approving Official:** University Board of Trustees
**Effective Date:** October 31, 2025
**Revision History:** New Adopted January 24, 2003; Amended, June 9, 2006, September 24, 2021, November 21, 2024, October 31, 2025

**I. Introduction**

The Florida Constitution and laws of the State of Florida establish the Florida State University Board of Trustees (hereinafter Board).

**II. Policy**

**Article I - Membership**

**Section 101 - Governing Law**

The membership of the Board shall be determined in accordance with the Constitution of the State of Florida and Florida law. The Board is established as a public body corporate, with all powers as provided by Florida law. The Board acts as an instrumentality or agency of the State of Florida for purposes of sovereign immunity pursuant to section 768.28(2), Florida Statutes.

**Section 102 - Board Officers and Executive Officer/Corporate Secretary**

(a) The Board shall have a Chair and a Vice Chair. The Board will elect a Chair every two years at the first in-person meeting held during the fall semester, or at such other time as deemed necessary by a majority vote of the Board to fill a vacancy. On alternating years when the Board does not elect a Chair, the Board shall at the first in-person meeting of the fall semester elect a Vice Chair to serve a two-year term. The length of the Chair's term and the number of terms served by the Chair are established by regulation of the Florida Board of Governors.

(b) The Chair of the Board shall preside at meetings of the Board, call regular, special, or emergency meetings, sign and execute all documents and instruments on behalf of the Board, and perform such other duties as may be required by law or directed by the Board. The Chair may delegate the authority to sign and execute documents and instruments on behalf of the Board to the Corporate Secretary.

(c) The Vice Chair of the Board shall have the powers and perform such duties as may be delegated to that individual by the Board and in the event of the death, absence or inability of the Chair to act, perform such duties and exercise the powers of the chair.

(d) The University President is the Executive Officer and Corporate Secretary ("Secretary") of the Board and shall be responsible for ensuring meeting minutes are kept. The Secretary shall attest to the signature of other officers of the Board when required or necessary and shall affix the seal of the Board when necessary. The Secretary shall perform the duties customarily performed by the secretary to a public body corporate as well as such other duties as may be prescribed by the Board. As Executive Officer, the University President shall serve as the principal liaison and official contact between the

Board and the faculty, staff and students of the university. The President shall exercise such powers as are appropriate to that position in promoting, supporting and protecting the interests of the University and in managing and directing its affairs. The President shall be responsible for all management functions of the University consistent with the policies established by the Board and shall exercise such other powers, duties and responsibilities as are delegated or assigned by the Board and Florida statutes. The Corporate Secretary may delegate to university staff duties related to meeting organization and recordkeeping.

**Article II -- Meetings**

**Section 201 - Scheduling of Meetings of the Board and Board Committees**

(a) There shall be an organizational meeting of the Board every two (2) years for the election of the Chair, Vice Chair, and such other additional officers as the Board may decide are necessary and appropriate. If the organizational meeting of the Board is not held as stated above, the election of officers may be held at any meeting called pursuant to these practices and procedures. Normally, to be eligible for election as Chair or Vice Chair, a member of the Board shall have at least two years remaining on his or her term of appointment, provided that this requirement may be waived by a majority vote of the Board.

(b) Regular meetings of the Board shall be held as needed, with a minimum of three (3) meetings per year.

(c) Meetings of the Board and of board committees may be held at the Florida State University or other locations as deemed necessary and appropriate by the Board, including but not limited to locations in the vicinity of university campuses or facilities located outside of Tallahassee.

(d) Meetings of the board and of board committees may be conducted through conference call, teleconference, or video conferences.

(e) Meetings of the Board may be held for the purpose of acting on emergency or urgent matters requiring immediate attention affecting the university or public health, safety, or welfare. Special and emergency meetings of the Board shall be held when directed by the Chair or by any seven (7) members of the Board.

**Section 202 - Notice of Meeting**

(a) Reasonable notice of all meetings shall be made in accordance with Chapters 286 and 120, Florida Statutes, by publication in the Tallahassee Democrat newspaper, other major publication of general circulation in the area where the meeting will be held, media advisory, or on the Florida State University website.

(b) Reasonable notice of a regular meeting of the Board shall be made one (1) week before the meeting is scheduled to take place.

(c) Notice of meetings to consider emergency or urgent matters will be posted on the University web site as early as practicable prior to the meeting.

(d) Such notice shall state the date, time and place of the meeting, a brief description of the purpose, and the address where interested persons can write to obtain a copy of the agenda.

**Section 203 -- Agendas**

(a) The University President shall be responsible for setting the agenda for meetings of the Board in consultation with the Chair.

(b) At least seven (7) days prior to each regular meeting of the Board of Trustees, a copy of the agenda, including (insofar as is practicable) copies of all reports and other written materials to be presented to the meeting, shall be sent to each member of the Board by the Secretary. Supplemental material should be sent to members not later than three (3) days prior to the meeting.

(c) The Secretary or designee shall prepare and make publicly available the agenda for meetings of the Board.

(d) The agenda shall list the items in the general order they are intended to be considered. Items may be considered out of their stated order at the discretion of the Chair.

(e) The agenda shall consist of the following, as appropriate:

1. Call to Order and Roll Call

2. Pledge of Allegiance (for all live meetings or if feasible for virtual or telephonic meetings)

3. Moment of Silent Reflection

4. Review and Approval of Previous Meeting Minutes

5. Public Comment

6. President's Report

7. President's Remarks

8. Reports, Consent Items, Standing Committee Reports, Action Items and Informational Items

9. New Business

10. Chair's Report

11. Open Forum for Board Members

12. Executive Session

13. Adjournment

**Section 204 -- Attendance**

All trustees are expected to attend board and committee meetings. If a trustee has four absences in a two-year time period, the Chair will ensure that the trustee is still willing and able to serve and will notify the appointing authority of the specific trustee's attendance record. The chair may provide an annual report on trustee attendance to the Governor and Board of Governors.

**Article III - Conduct of Business**

**Section 301 - Call to Order and Roll Call**

At the hour appointed for the meeting, the Chair shall call the Board to order and the Chair or the Secretary shall call the roll.

**Section 302 -- Quorum**

A quorum of the Board shall consist of a majority of the members of the Board.

**Section 303 - Presiding Officer**

The Chair shall preside over all regular and special meetings of the Board. In the absence of the Chair, the Vice Chair shall preside. In the absence of both the Chair and the Vice Chair, the Secretary shall determine whether a quorum is present and, in that event, shall call for the election of a temporary presiding officer, who shall be elected by and from the membership of the Board upon a majority vote. Upon arrival of the Chair or Vice Chair, the temporary Chair shall relinquish the chair after concluding the business then before the Board.

**Section 304 -- Member Voting**

(a) All members of the Board shall vote on all matters coming before the Board for consideration in accordance with section 286.012, Florida Statutes, unless a member abstains due to a disclosed conflict of interest in the manner required by law. No member may vote by proxy or by secret ballot. Each member having the right and entitled to vote at a meeting of the Board shall be entitled, at each meeting and upon each proposal presented at such meeting, to one vote.

(b) No action shall be taken by the Board without the affirmative vote of at least seven (7) members.

(c) For purposes of agenda items brought before the Board of Trustees pursuant to section 288.860, Florida Statutes, related to foreign countries of concern, the recommendation must be unanimous by the Board Research Committee, or other applicable Board committees hearing the item, in order for the item to progress to the Board of Trustees for consideration. If the item progresses to the Board of Trustees for a vote, the item must receive a supermajority of votes in favor (nine affirmative votes) for the item to move forward to the Florida Board of Governors.

**Section 305 - Procedures**

(a) The business of the Board shall be taken up for consideration and disposition in accordance with the agenda for the meeting.

(b) The vote upon any resolution, motion or other matter may be by voice vote, provided that each trustee's individual vote is recorded in the minutes. The Chair or any Board member may require a roll call vote.

**Section 306 -- Minutes**

(a) The Secretary shall ensure minutes are kept of all regular meetings of the Board of Trustees; shall file and preserve all minutes, rules, orders, papers, and documents pertaining to the business and proceedings of the Board; shall be custodian of all records of the Board; and, when required, shall execute all legal documents and instruments of Florida State University.

(b) The Secretary shall develop minutes of the meeting to be sent to the members of the Board with the next meeting agenda.

(c) Records of the meetings of the Board, including any tape recording or video recording, are subject to Chapter 119, Florida Statutes, unless otherwise confidential or exempt under Florida law.

**Section 307 - Communications**

All communications from the Board or any of is committees addressed to any employee or student of the University shall be transmitted through the President or President's designee. This section does not preclude individual members of the Board from contacting any member of the university community.

**Section 308 - Applicability of Robert's Rules of Order**

Robert's Rules of Order Newly Revised shall be used to conduct meetings of the Board, except where these operating procedures specifically provide otherwise.

**Section 309 - Public Comment**

The Board shall adopt procedures for public comment at Board meetings.

**Article IV - Powers and Duties**

**Section 401 - General Powers and Duties**

(a) The Board is vested with the authority to govern and set policy for the Florida State University as necessary to provide proper governance and improvement of the University in accordance with law and rules of the Florida Board of Governors.

(b) The Board may adopt regulations and policies consistent with the University's mission, with law, and with regulations of the Florida Board of Governors.

**Section 402 - Other Powers and Duties**

The Board shall have such other powers and duties, not inconsistent with applicable provisions of State law, as presently or as shall be defined and delegated by the Florida Board of Governors.

**Article V - Committees**

**Section 501 -Committees**

(a) The Chair of the Board shall have the power to establish and dissolve committees and appoint members. Standing committees are charged specifically with the immediate care and supervision of the subject matters assigned to them.

(b) *Ex Officio* Members: The Chair of the Board of Trustees, or in the Chair's absence the Vice Chair of the Board, shall be an ex officio voting member of all standing committees and subcommittees.

**Section 502 - Notice and Records**

The Secretary of the Board shall notice meetings of standing, special, and *ad hoc* Committees in the same manner as for meetings of the Board of Trustees. The Secretary shall ensure that minutes of all committee meetings are kept.

**Article VI - Conflict of Interest**

**Section 601-- Disclosure of Potential Conflict of Interest by Members of the Board of Trustees:**

(a) The Board shall adopt an Ethics Policy governing conflicts of interest of individual Board members.

(b) The Chair shall, at the start of each meeting, read a statement reminding Board members of the requirements of the Board Ethics Policy.

**Article VII - Adoption, Amendment and Rescission of Operating Practices and Procedures**

Following initial adoption, the Operating Procedures may be amended or rescinded at any regular meeting of the Board by a two-thirds vote of the total voting membership of the Board, provided that written notice containing the wording of each provision to be adopted, amended, or rescinded shall have been presented at the preceding regular meeting of the Board.

**III. Legal Support, Justification, and Review of This Policy**

Article IX, Section 7 Florida Constitution, BOG 1.001, 1001.71 Florida Statutes.

Policy will be reviewed by Board at least every five years.

 

| | **Florida State University Police Department** | |
|---|---|---|
|  | **Media Relations and Public Information** | |

| Revision Effective Date: 09/01/17 | **General Order 309** | Attachments: None |
|---|---|---|
| Rescinds/Amends: 28 (6/29/16),14-28 | Distribution: Department-Wide  Pages: 7 | CFA Reference: 1.06 & 1.07 |

**Media Relations and Public Information Policy**

**POLICY**

As a matter of policy, the Florida State University Police Department (FSU PD) strongly believes in establishing and maintaining a cooperative and mutually respectful relationship with the news media and general public.  Hence, it is the explicit policy of the FSU PD to effect and follow procedures regarding media relations and public information that strikes an appropriate balance between the public's right to know and the furtherance of the FSU PD's efficient, effective, and lawful operations [CFA 28.01 A.].  The FSU PD further recognizes the special position of the University's Media Relations Office and the necessity to coordinate media relationship matters with that organization.

**Procedure**

A.  **Persons Authorized to Release Information** [CFA 1.06A]

Under the authority of the Chief of Police, the Public Information Officer shall serve as the primary Media and Public Relations spokesperson for the Department.  The Public Information Officer is designated by the Chief of Police to coordinate public relations activities, direct social networking initiatives, and respond to requests for information from the news media and the public. The responsibility may be delegated to the Assistant Public Information Officer, Adjunct Public Information Officer, or other members as directed.

1.  Public Information Officer
The Deputy Chief is delegated the authority to serve as the primary Public Information Officer (Media and Public Relations Spokesperson) for the Department.  The Public Information Officer shall be responsible for assisting and otherwise releasing information to the various news media and general public.

2.  Assistant Public Information
During the absence of the Public Information Officer, or when the heavy burden of other duties prevents the Public Information Officer from serving in the role, the responsibility for dealing with the news media and general public shall be delegated to the Lieutenant for Support Services, who shall further serve as the Assistant Public Information Officer.

3.  Adjunct Public Information Officer
Sworn members may be selected to serve as Adjunct Public Information Officers at the discretion of the Chief and/or Deputy Chief.  The Adjunct Public Information Officers will serve under the direct authority of the Public Information Officer (Deputy Chief).  The position of

309                                                             1

Adjunct Public Information Officer is intended to expose selected members to the role of Public Information Officer by providing hands on training/preparation. The Adjunct Public Information Officer may serve in the role as Public Information Officer when delegated by the Chief and/or Deputy Chief.

**B.   Responsibilities of the Public Information Officer**

1.  The Public Information Officer or designee shall be responsible for carrying out the following responsibilities and procedures related thereto.

    a.   Assist news personnel in covering routine stories, either within Departmental headquarters or at the scene of crimes or incidents. [CFA 1.06B]

    b.   Being available for on-call responses to the news media. [CFA 1.06C]

    c.   Preparing and distributing agency new releases; including use of social media. [CFA 1.06D]

    d.   Arranging for, and assisting with news conferences. [CFA 1.06E]

    e.   Coordinating and authorizing the release of information about victim, witnesses, and suspects. [CFA 1.06F]

    f.   Coordinating and authorizing the release of information concerning confidential investigations and operations in accordance with state statutes. [CFA 1.06G]

2.  Act as liaison between news media representatives and the Department.  Appropriate news and news-related activities shall include, but not be limited to [CFA 1.06B]:

    a.   Specific crimes or incidents.

    b.   Statistical information.

    c.   Feature stories on Departmental activities, personnel, or internal changes.

    d.   Areas of general concern to the University and community publics.

    e.   News media inquiries, either in person, by telephone, fax, or e-mail

    f.   Arrange or assist with news conferences.  No news conferences shall be arranged without prior approval from the Chief of Police.  In addition, the Chief of Police shall be the final authority for determining the frequency of news conferences, press releases and the subject matter thereof.  However, in situations where the Chief of Police is either absent or incapacitated, the Public Information Officer shall be delegated this specific authority.

3.  Conditions of Performance of Duty for the Public Information Officer, Assistant Public Information Officer or Adjunct Public Information Officer.

    a.   During normal business hours, the Public Information Officer or designee shall be available within the Department headquarters. After normal business hours, the Public Information Officer or designee may be contacted by e-mail or cell phone.

    b.   In appropriate circumstances, depending upon the complexity, confidentiality, or seriousness of the information, the Chief of Police, lead investigator, and/or other knowledgeable personnel shall be present during any interactions with the news media in order to provide additional background information.

    c.   At no time will the Public Information Officer, Assistant Public Information Officer, or any other personnel within the Department—sworn or non-sworn—attempt to handle a media inquiry without a thorough knowledge of the facts and circumstances regarding the particular request for information or query.

309                                                                                2

   d.   The Public Information Officer and Assistant Public Officer or designee shall be appropriately attired and respond to media inquiries in a straightforward and courteous manner.

**C.   Information Which May Be Released**

The following information, in accordance with the provisions of Chapter 119, F.S. (Public Records Law), may be released:

1.   The date, time, location, and nature of a reported crime.

2.   The amount of damage or loss associated with a reported crime.

3.   The name, age, sex, photograph, and address of a person arrested if the person is:

   a.   An adult, or

   b.   A child under 18 years of age and has been taken into custody for a violation of the law, which, if committed by an adult would be a felony, or has been found by the court to have committed at least three or more violations, if committed by an adult, would be a misdemeanor.

4.   The date, time, and location of an arrest.

5.   The specific crime for which a suspect has been arrested.

6.   General information pertaining to the organization, management, policies, plans, and programs of the Department that correspond to the items cited above which do not violate the items cited subsequently in Section D.

7.   Internal disciplinary or investigative matters if prior approval is granted by the Chief of Police and if such information is not in violation of the confidentiality provisions of on-going Internal Affairs investigations.

**D.   Information Which May Not Be Released**

The following information, in accordance with Chapter 119. F.S., other Florida statutes regarding open, active, and/or ongoing investigations, and the Federal "Buckley" Amendment **may not be released**.

1.   Information classified as confidential by law or judicial decision.

   a.   Information revealing the identities of confidential sources.

   b.   Information revealing the identities of undercover personnel of a criminal justice agency.

   c.   Any personal information, i.e., name, address, telephone number, etc. of a victim of sexual battery, child abuse, or person under the age of sixteen who is a victim of a sexual offense (the victim's gender, age, and general location of the incident may be released). [CFA 1.07G]

   d.   Information revealing the identity of a juvenile except when authorized by Florida Statute. [CFA 1.07H]

   e.   Names, addresses and photographs of any individual sought for a crime, but not yet formally charged, unless assistance is required from the news media or public in an effort to locate the subject, or such a release is in the interest of public safety.  [CFA 1.07B]

   f.   The address, phone number, and telephone numbers of sworn personnel; the names, phone numbers, and places of work of spouses of sworn personnel; and the names, phone numbers, addresses, and/or schools of children of sworn personnel.

   g.   Information from student records that any FSU students explicitly states, on a form on file with the Registrar's Office, that he or she does not want released in accordance with the provisions of the Federal "Buckley Amendment".

h.   Information revealing the home or employment telephone number, home or employment address, or personal assets of a victim of sexual battery, aggravated child abuse, aggravated stalking, harassment, aggravated battery, or domestic violence. The contents of any suicide note.

i.   The name of a victim in a death investigation.  However, that name may be released when:

1)   The victim is positively identified; and

2)   The next of kin has been notified.

j.   Information obtained from other agencies without their concurrence for release. [CFA 1.07I]

2.   Information which may be withheld from the Media or Public:

a.   Active criminal intelligence and active criminal investigative information, including but not limited to:

1)   Statements related to the prior record, character, or reputation of the accused. [CFA 1.07A]

2)   Admissions, confessions, refusal of statements, or the contents of a statement or alibi attributed to a suspect. [CFA 1.07C]

3)   The performance or the results of any examinations or tests, or the refusal of the accused to take any examinations or test, or to participate in a line-up. [CFA 1.07D]

4)   The identity, credibility or anticipated testimony of a prospective witness. [CFA 1.07E]

5)   Opinions of agency members regarding the guilt or innocence of the accused or merits of the case.  [CFA 1.07F]

6)   Information concerning active criminal investigations should not be released prior to approval of the investigator or supervisor in charge of the investigation.

**E.   Release of Information (Post Hoc)**

After a criminal investigation is satisfactorily closed, and has gone through the judicial process, all information regarding the criminal incident and investigation may be released to the media, with the exception of information protected by state statutes and Federal laws.

**F.   Release of Information When Public Information Officer or Assistant Public Information Officer Are Not Available**

Any and all Departmental personnel—sworn and non-sworn—are prohibited from answering media questions pertaining to a specific crime, incident, or internal investigation.  Rather, Departmental personnel are to courteously refer media inquiries to the Public Information Officer and/or Assistant Public Information Officer.  The only exception is when prior approval has been given to the officer by the Chief, Public Information Officer and/or Assistant Public Information Officer subsequent to the crime, incident, or internal investigation.

1.   Departmental personnel should advise media representatives that the Public Information Officer and/or Assistant Public Information Officer shall make contact as soon as possible.

2.   Departmental personnel should obtain sufficient information from media representatives to expedite contact with the Public Information Officer and/or Assistant Public Information Officer.

**G.** **General Procedures Regarding Media Interactions**

1. Press Releases

   Neither the Public Information Officer and/or Assistant Public Information, nor any personnel from the Department—sworn or non-sworn—shall prepare and/or distribute any written press releases to media representatives without the approval of the Chief of Police.

   All written press releases shall be prepared by the Public Information Officer and/or Assistant Public Information Officer. The Department may request the FSU Department of Media Relations prepare the press release in final form and distribute it to media representatives.

   The Public Information Officer, using the authority and discretion specified throughout this general order, may orally release information to media representatives. Subsequent to the release of information to the media, the Public Information Officer, in a timely manner, will inform the FSU Department of Media Relations of the nature of the information released, to whom it was released, and when it was released.

2. Perimeter Lines

   Official perimeter lines may be established at the scene of a crime, investigation, or incident to prevent unauthorized personnel from entering the area. Members of the media have no inherent right to enter such areas, but may be granted special access by the Public Information Officer or Assistant Public Information Officer, provided that:

   a. Their physical presence, reporting, and photographing at the scene would not jeopardize any police operations or hinder the proper collection or preservation of evidence.

   b. The scene is located on public property. Or, if located on private property, the owner and/or agent consent to the presence of media representatives. Absent such consent, media representatives trespass at their own peril without Departmental approval.

   c. Proper media credentials are presented.

   d. The crime scene has been secured.

   e. The preservation and processing of evidence has been completed.

4. Under no circumstances will prisoners be permitted to pose for photographs or participate in media interviews while in the custody of the Department.

**H.** **Access to Media Representatives for Natural Disasters, Fires, and Catastrophic Events**

Upon presenting valid media credentials, the Public Information Officer or Assistant Public Information Officer may permit media representatives to enter any area closed because of danger to public health or safety. However, it must be clearly stated to the media representatives that they, themselves, assume the risk of entering such areas.

If, in the opinion of the Public Information Officer or Assistant Public Information Officer, there is danger to human life, limb, or property, and that such danger shall, in all likelihood, escalate, then the media representatives shall be ordered from the scene.

*Glossary*

**Assistant Public Information Officer** – Support Services Lieutenant

**Active Criminal Investigative Information** – shall be considered active as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future (FS 119.011(3)(d)2)

**Active Criminal Intelligence Information** – shall be considered active as long as it is related to intelligence gathering conducted with a reasonable, good faith belief that it will lead to detection of ongoing or reasonably anticipated criminal activities (FS 119.011(3)(d)1

**Criminal Intelligence Information** – means information with respect to an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity (FS 119.011(3)(a)

**Public Information Officer** – Deputy Chief

**Public Records** – all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of form, characteristics, or means of transmission, made or received pursuant to law or ordinance on in connection with the transaction of official business by any agency. (FS 119.011(1))

*Index*

"Buckley" Amendment
Media Relations
Media & Public Relations
Press Conferences
Press Releases
Public Information
Public Information Officer
Public Records

*Attachments*—None

| | |
|---|---|
| MTC  08/21/17     Filed:  General Order 309 | |
| Title:  Media Relations and Public Information | |
| Approved: _____ David L. Perry, Chief | |
| Date: _____08/21/17_____ | |